UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America, | No. 2:23-cr-00114-KJM |
| Plaintiff, | ORDER |
| v. | |
| Shaun Jones, | |
| Defendant. | |

Defendant Shaun Jones moves to vacate or correct his sentence based on his allegation that his appointed attorney overestimated his advisory Guideline sentencing range during plea negotiations. As explained in this order, the undisputed record does not support Jones's claims of ineffective assistance. The court therefore declines to hold an evidentiary hearing and denies his motion. The court does, however, grant his request for a certificate of appealability.

**I.    BACKGROUND**

In September 2022, the government filed a criminal complaint in this case, which alleged Jones had violated federal gun and drug laws, i.e., 18 U.S.C. § 922(g)(1), prohibiting firearm possession by those who have been convicted of a felony, and 21 U.S.C. § 841(a)(1), punishing the unlawful distribution of controlled substances. *See* Crim. Compl. at 1, ECF No. 1. The complaint attached an affidavit from a task force officer with the U.S. Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives. *See* Oliver Aff. ¶ 1, ECF No. 1.

1

1  According to that affidavit, law enforcement officers had worked with a confidential informant,
2  and they had recorded and taken pictures of Jones selling guns and prescription opioids to the
3  informant.  *See id.* ¶¶ 5–17 (firearm purchase); *id.* ¶¶ 18–24 (drug purchase).  The agent alleged
4  Jones had previously been convicted of robbery, drug possession and attempted burglary in state
5  court.  *See id.* ¶ 28.  The criminal complaint also alleged that during conversations about the
6  alleged drug and gun sales, Jones told the confidential informant he had robbed a marijuana
7  dispensary.  *Id.* ¶ 12.  When agents checked the lot numbers on the pills the confidential
8  informant obtained from Jones, they connected the pills to a trio of Bay Area pharmacies that had
9  recently been burglarized.  *See id.* ¶¶ 25–26.  Jones was on pretrial release at the time, and as a
10 condition of his release, he was obligated to wear a device that tracked his location.  *Id.* ¶ 27.  On
11 that device, officers found data showing Jones was near the three pharmacies at about the time of
12 each burglary.  *Id.*

13       Jones was arrested and made his initial appearance before the court in April 2023.  Mins.,
14 ECF No. 6.  A citizen grand jury returned an indictment later that month, superseding the criminal
15 complaint.  ECF No. 14.  The indictment included two charges, one under each of the two statutes
16 cited above: 18 U.S.C. § 922(g)(1) and 21 U.S.C. § 841(a)(1).  *Id.* at 1–2.

17       Michael Long was appointed to represent Jones in June 2023.  *See* Substitution Order,
18 ECF No. 20.  Jones did not want to go to trial, so he authorized Long to negotiate a plea
19 agreement with the government.  Jones Decl. ¶ 3, ECF No. 63-1.  In July, Long received an offer
20 from the prosecution and discussed it with Jones.  *See* Fakhoury Decl. Exs. A, C, ECF Nos. 63-1
21 & 63-5.  Under the prosecution's proposed plea agreement, Jones would plead guilty to the gun
22 charge, and the government would dismiss the drug charge.  *See id.* Ex. A at 2, 4.  The U.S.
23 Attorney's Office for the Eastern District of California also would agree not to pursue additional
24 charges against Jones based on seven pharmacy burglaries in California and Oregon, although the
25 agreement would not bind offices in other federal districts, nor any state agencies.  *Id.* at 4–5.
26 Finally, the agreement would have limited the parties' sentencing arguments.  Jones could have
27 asked for a sentence of 60 months, no less; the government could have recommended at most 121
28 months.  *See id.* at 2, 5.  Long recommended against accepting the agreement and in favor of

1    further negotiations with the prosecution. He told Jones "it would be a good idea to propose a
2    stipulated sentence of an exact number of months." *Id.* Ex. C at 4. He warned Jones he "could be
3    sentenced closer to 14 or 15 years" if they could not agree to a specific recommendation, given
4    the circumstances of Jones's apprehension, his previous convictions and the relevant Sentencing
5    Guidelines. *Id.*

6         Jones agreed, and negotiations thus continued. Long discussed a variety of Guidelines
7    provisions with the government and with Jones, along with a few potential plea agreements.
8    Long and the government's counsel disagreed about some Guidelines provisions, but not all.
9    Most importantly for purposes of the current motion, the parties both consistently anticipated
10   Jones would have a base offense level of 26 under § 2K2.1(a)(1) of the Sentencing Guidelines,
11   due in part to his previous conviction under California Penal Code section 211, which defines
12   robbery.[1] *See, e.g.*, *id.* Ex. C at 1–2; Ex. F at 1–2; *id.* Ex. H at 1–2. As it turns out, the parties'
13   assumption was not correct. The Ninth Circuit had held a few years before that a conviction
14   under section 211 does not qualify as a "crime of violence" under § 2K2.1(a)(1), and so cannot
15   support a base offense level of 26 under that section of the Guidelines. *See, e.g.*, *United States v.*
16   *Bankston*, 901 F.3d 1100, 1102–04 (9th Cir. 2018).

17        After several months, the parties reached an agreement. Jones was not prepared to accept
18   a plea agreement based on a joint sentencing recommendation that would be acceptable to the
19   government—it was willing to recommend 100 months—so the final plea agreement once more
20   set limits on the parties' recommendations instead: the defense could recommend no less than 84
21   months, while the prosecution could recommend no more than 125. *See* Fakhoury Decl. Ex. H at
22   1; Plea Agreement at 2, 6, ECF No. 27. The final plea agreement also expanded the list of
23   charges that the local U.S. Attorney's Office agreed not to present to a grand jury. *See* Plea
24   Agreement at 4–6. It identified many more suspected burglaries—twenty-four rather than seven.
25   *See id.* And finally, as was true throughout the parties' negotiations, the final agreement was

---

[1] *See* Cal. Pen. Code § 211 ("Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear.").

3

based on the parties' assumption that the base offense level would be 26 under § 2K2.1(a)(1). *See* Fakhoury Decl. Ex. H at 1–2.

From the beginning of the case, Jones was surprised by how much prison time he was facing. *See* Jones Decl. ¶ 4. He thought the 84-to-125-month range in the final agreement "was a lot of time for the crimes [he] had committed," but he relied on Long's expertise and advice when it came to the relevant Sentencing Guidelines, including § 2K2.1(a)(1). Jones Decl. ¶¶ 4–11. "I was not thrilled," Jones explains, "but based on [Long's] advice, I felt that was the best offer and outcome I could get." *Id.* ¶ 12.

The court accepted Jones's guilty plea after confirming he understood his potential exposure to prison time and the advisory Sentencing Guidelines:

> The Court: In terms of the penalties associated with the charge in Count One, the felon in possession charge, they are as follows: Imprisonment—it is up to 15 years?
>
> [The Prosecutor, Ms. Sauvageau]: Correct, Your Honor.
>
> The Court: Agreed, Mr. Long?
>
> Mr. Long: Yes. For Count One, yes, that is correct.
>
> The Court: So imprisonment of up to 15 years, a fine of up to $250,000 or possibly both fine and imprisonment. A term of supervised release of up to three years. There's also a mandatory special assessment of $100. Do you understand that those are the penalties and that's the assessment associated with the charge?
>
> The Defendant: Yes, ma'am.
>
> . . .
>
> The Court: Do you have any question about possible consequences at this point, Mr. Jones?
>
> The Defendant: No, ma'am.
>
> The Court: Let's make certain you understand how sentencing here will work. If I do accept your plea, sentencing is governed by federal law. That law has a governing body called the US Sentencing Commission. That commission has published guidelines that I must consult even though they are advisory. I gather you and Mr. Long

|   |   |
|---|---|
| 1 | have talked about how the guidelines may apply to your case; is that |
| 2 | correct? |
| 3 | The Defendant: Yes, ma'am. |
| 4 | The Court: Do you understand that regardless of what he's told you |
| 5 | or the attorneys may have discussed or agreed upon, that ultimately |
| 6 | here it will be my job, on my own, to calculate the guideline range at |
| 7 | the time of sentencing. You understand that? |
| 8 | The Defendant: Yes, ma'am. |
| 9 | The Court: And do you understand that once I calculate the guideline |
| 10 | range, then I will decide whether or not to go outside of it, above or |
| 11 | below it, to the extent I can under the law. And I'll do that based on |
| 12 | my own reading of the law, the sentencing factors Congress has said |
| 13 | I must consider, the guidelines, and I'll be looking at the factual |
| 14 | record of your case. Do you understand all of that? |
| 15 | The Defendant: Yes, ma'am. |
| 16 | The Court: And do you understand, at the time of sentencing, I'll |
| 17 | have information I don't have now. So I'll have information about |
| 18 | your own personal characteristics, your history, your criminal |
| 19 | history, the nature of the offense you're saying you're willing to |
| 20 | plead guilty to. So I'll have more information at the time of |
| 21 | sentencing and I'll rely on that in making my decision. Do you |
| 22 | understand that? |
| 23 | The Defendant: Yes, ma'am. |

Change of Plea Hr'g Tr. at 9–12, ECF No. 55.

After the court accepted Jones's plea, the Probation Office prepared a Presentence Investigation Report. *See generally* PSR, ECF No. 35. It calculated Jones's sentencing Guidelines range using a base offense level of 22, not 26, correctly omitting Jones's previous conviction under section 211 from consideration. *See id.* at 5. Jones says he was "surprised" when he saw the base offense level was 22 rather than 26. Jones Decl. ¶ 13. After a two-level enhancement for the number of firearms involved, a four-level enhancement for possessing firearms in connection with another offense (drug possession), and reductions for his acceptance of responsibility and assistance, the Probation Officer calculated a total offense level of 25. *See* PSR at 5–6. His criminal history score was 9, leading to a criminal history category of IV and a

1  Guideline sentencing range of 84 to 105 months. *See id.* at 10, 15. The statutory maximum was
2  fifteen years, as the court had discussed with Jones at his change of plea hearing. *See id.* at 15
3  (citing 18 U.S.C. § 924(a)(8)).

4  At sentencing, the court sustained Long's objection, on Jones's behalf, to the four-level
5  firearms possession enhancement noted above, leading to a total offense level of 21 and a
6  Guidelines range of 57–71 months. *See generally* Sent. Hr'g Tr., ECF No. 56. Long requested a
7  sentence of 84 months, "the low end of the range at which [he was] allowed to argue" under the
8  plea agreement. *Id.* at 23, 25. The government requested 125 months, the highest number it was
9  permitted to recommend under the plea agreement. *Id.* at 24–25. The court considered the
10 parties' positions and the record, which it found "very troubling." Sent. Hr'g Tr. at 26. Jones
11 was "very fortunate," in the court's view, that he was "not facing additional charges at this point,
12 at least federal charges," given the drug and burglary charges the government had agreed not to
13 pursue. *Id.* That said, the court could see his "potential" and "promise" if he took to heart and
14 followed through on what he had said in open court. *Id.* The court thus imposed a sentence of 84
15 months, recognizing it was an upward departure, but finding "all things considered" that a
16 sentence of 84 months was "sufficient but not greater than necessary" under 28 U.S.C. § 3553(a).
17 *Id.* at 26–27. The court filed its statement of reasons, which memorializes these findings:

> The court varied upward, to the low end of the range the parties agreed to in their plea agreement, taking into account the aggravating factors of Defendant's very concerning uncharged conduct and his recidivism with respect to gun possession. The court declined to go to the high end of the parties' range given Defendant's concrete and realistic plans to complete a program of secondary education to enhance his ability to lawfully provide for his wife, who remains supportive, and his two very young children. The court also took account of Defendant's substance abuse and childhood trauma, which is addressed by the court's recommendation that he be allowed to participate in the Bureau of Prison's Residential Substance Abuse Treatment Program.

ECF No. 47.

Jones now moves to vacate or set aside his conviction and sentence under 28 U.S.C.
§ 2255 based on the argument that he received unconstitutionally ineffective assistance of counsel

6

1  during plea negotiations. *See generally* Mot., ECF No. 63. The government opposes the motion,
2  ECF No. 66, and Jones has filed a reply, ECF No. 67. The court took the matter under
3  submission without holding a hearing.

4  **II.    DISCUSSION**

5  Although Jones waived his right to file a collateral attack in his plea agreement to the
6  extent he could, he cannot have waived his current claim because he contends his attorney's
7  ineffective assistance is what caused him to enter the allegedly preclusive plea agreement in the
8  first place. *See United States v. Rodriguez*, 49 F.4th 1205, 1212 (9th Cir. 2022) (citing
9  *Washington v. Lampert*, 422 F.3d 864, 871 (9th Cir. 2005)). To show an attorney provided
10 ineffective assistance, a criminal defendant must show both that the attorney's performance fell
11 below the standard of what is constitutionally required and that the attorney's "deficient
12 performance prejudiced his defense." *United States v. Gordon*, 151 F.4th 1090, 1098 (9th Cir.
13 2025) (citing *Harrington v. Richter*, 562 U.S. 86, 104–05 (2011) and *Strickland v. Washington*,
14 466 U.S. 668, 687–89, 693–94 (1984)).

15      **A.    Ineffective Assistance**

16 An attorney does not offer ineffective assistance simply by making an "inaccurate
17 prediction" about the sentence the court is likely to impose. *Iaea v. Sunn*, 800 F.2d 861, 865 (9th
18 Cir. 1986). But a "gross mischaracterization of a case's likely outcome" can support an
19 ineffective assistance claim. *Gordon*, 151 F.4th at 1098 (quoting *Iaea*, 800 F.2d at 865). The
20 discrepancy between the attorney's prediction and the ultimate sentence must be "egregious,"
21 such as the difference between probation and a multi-year prison sentence. *See id.* at 1099 (citing
22 *United States v. Davis*, 428 F.3d 802 (9th Cir. 2005) and *Chacon v. Wood*, 36 F.3d 1459 (9th Cir.
23 1994), *superseded by statute on other grounds as stated in Hall v. City of Los Angeles*, 697 F.3d
24 1059, 1070 (9th Cir. 2012)).

25 Here, the discrepancy between the Guidelines range Jones ultimately faced at sentencing
26 (57 to 71 months) and the various predictions Long made during plea negotiations was not so
27 egregious. In terms of the raw numbers, the 84-month prison sentence this court imposed was
28 about two years longer than the low end of the Guidelines range, i.e., the low end range Jones

now argues an effective attorney would have calculated and presented to him. Jones's 84-month sentence was about one year longer than the upper end of that same, accurate Guidelines range. Although there is no bright line applicable here, the Ninth Circuit has upheld much wider discrepancies, even five years or more, "without finding counsel's representation to be deficient." *Id.* at 1099.

Nor did Long's predictions amount to a "gross mischaracterization" from a qualitative perspective. Long consistently predicted Jones was facing many years in prison. Although his predictions were too high, they were fundamentally accurate in that Jones did ultimately face and receive a years-long prison sentence. *Cf. Womack v. Del Papa*, 497 F.3d 998, 1003 (9th Cir. 2007) (rejecting ineffective assistance argument based on counsel's description of plea agreement as defendant's "best chance" to receive "thirty to forty years" when he was later "sentenced to eight terms of life without parole"). This is simply not a case involving a stark difference between a very mild sentence, such as probation or a few months in jail, and a term of many years or decades in prison. *See Gordon*, 141 F.4th at 1099 (collecting authority). The discrepancy between Long's pre-sentencing advice about the Guideline sentencing range and the actual range the court calculated was a little more than two years at most, as explained above.

Jones argues the discrepancy between Long's predictions and his actual sentence was actually much larger than just a year or two. *See* Reply at 3. He cites Long's warning in July 2023 "that there is a significant risk that you could be sentenced closer to 14 or 15 years if we did not stipulate with the USA to a specific number of months." Fakhoury Decl. Ex. C at 4. If Long had consistently predicted that Jones was likely to be sentenced to fourteen or fifteen years in prison, that might have been a gross mischaracterization, assuming a four- or five-year sentence was actually the highest likely sentence. In reality, however, Long did not consistently predict Jones was likely to face fourteen or fifteen years. The undisputed record shows Long and Jones discussed much shorter potential sentences and recommendations, including recommendations of 60, 84 or 100 months, and Long ultimately offered an 84–105 month Guideline range as his "best estimate" of what Jones would face. *Id.* Ex. H at 1–2.

In some cases, less egregious discrepancies can support claims of ineffective assistance, but only if other "aggravating factors" lend support to that conclusion as well. *Gordon*, 151 F. 4th at 1098–99 (citing *United States v. Manzo*, 675 F.3d 1204, 1208–10 (9th Cir. 2012) and *Iaea*, 800 F.2d at 863–65). The Ninth Circuit has cited its decision in *Iaea* to explain the types of aggravating factors that might support this type of reasoning. *See, e.g.*, *id.*; *Manzo*, 675 F.3d at 1209–10. The attorney in *Iaea* repeatedly told her client and his family "there was a good chance of his getting probation if he accepted the plea bargain," and she wrongly advised him the only way to avoid a statutory minimum sentence was to enter a plea agreement, among other erroneous advice and questionable pressure tactics. *See* 800 F.2d at 863–65. Her advice persuaded the defendant to accept a plea agreement despite his heavy reservations. *See id.* The trial court then imposed a much harsher sentence than the non-custodial sentence his attorney had said was a possibility. *See id.* (describing the final custodial term as "life sentences on the A felony counts, twenty-year sentences on the B felony counts and a ten-year sentence on the C felony").

Jones argues there was a similar "aggravating factor" in this case: Long's failure to recognize that Jones's prior robbery conviction was not a "crime of violence" and thus could not support a base offense level of 26 under § 2K2.1(a)(1) of the Sentencing Guidelines. *See* Mot. at 17–19; Reply at 2–3. He relies primarily on the Ninth Circuit's decision in *Manzo*. *See, e.g.*, Mot. at 18 (citing 675 F.3d 1204). The dispute in *Manzo* was similar to the dispute in this case, in a limited sense. In both this case and *Manzo*, the parties negotiated a plea agreement based on their shared misapprehension of the relevant guidelines calculation. *See* 675 F.3d at 1207–08. Beyond this similarity, however, the potential analogy breaks down. The sentence the district court ultimately imposed in *Manzo* (292 months) was about twice as long—and more than a decade longer—than the sentencing range the defendant and the parties had previously anticipated (135 to 168 months). *See id.* at 1208. Here, by contrast, the discrepancy was a year or two, a significantly smaller sum, both proportionally and in absolute or qualitative terms. And counsel not only failed to anticipate in *Manzo* that the Guidelines range would be so much longer. When the misapprehension was corrected, the attorney did not advise his client to file a motion to withdraw from the plea agreement, and this lapse was central to the Ninth Circuit's reasoning.

9

1  *See id.* at 1210 ("We conclude that his counsel's failure to anticipate the applicability of the grouping provision to Manzo's sentencing and failure then to advise Manzo to move to withdraw from the plea agreement was constitutionally deficient."). Jones does not fault Long for failing to advise him that he could or should have moved to withdraw from the plea agreement. Jones has not demonstrated Long offered ineffective assistance.

### B.  Prejudice

Even if Jones had demonstrated Long's representation fell below the relevant professional standard, the court could not grant his current motion unless he also showed the ineffective assistance "prejudiced his defense." *Gordon*, 151 F.4th at 1098. Showing "prejudice" in this context means demonstrating there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 687–88. "A 'reasonable probability' is a standard of proof 'sufficient to undermine confidence in the outcome' and is 'somewhat lower' than a preponderance of the evidence." *Rodriguez-Vega*, 797 F.3d at 788 (quoting *Strickland*, 466 U.S. at 694).

"In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice." *Lafler v. Cooper*, 566 U.S. 156, 163 (2012). Courts often have repeated the Supreme Court's statement in *Hill v. Lockhart* that the defendant must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have instead insisted on going to trial." 474 U.S. 52, 59 (1985); *see also, e.g.*, *Iaea*, 800 F.2d at 865 (quoting this language). But the Supreme Court has clarified there are other ways to demonstrate "prejudice arising from the deficient performance of counsel during plea negotiations." *Missouri v. Frye*, 566 U.S. 134, 148 (2012). Consistent with that holding, the Ninth Circuit has for many years "broadly constru[ed] the *Hill* standard to encompass more than simply claims of a desire to go to trial." *United States v. Baramdyka*, 95 F.3d 840, 846 (9th Cir. 1996) (citing *Hill*, 474 U.S. 52). It also has considered whether a defendant "would have received a better plea agreement" if his attorney had not fallen short of the constitutional standard. *Id.*; *see also, e.g.*, *Rodriguez*, 49 F.4th at 1213 (restating this rule); *Rodriguez-Vega*, 797 F.3d at 788 (same).

Jones states in a declaration that if he "had known that [his] base offense level was only 22, not 26," then he "would have either asked [Long] to negotiate a different plea agreement with the government or entered an 'open' guilty plea without any plea agreement." *Id.* ¶¶ 18–19. The Supreme Court has instructed lower courts not to "upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *Lee v. United States*, 582 U.S. 357, 369 (2017). "Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id.*

Here, the contemporaneous evidence of the parties' plea negotiations and Jones's guilty plea do not support his claim after the fact that he would have demanded a more favorable plea agreement, let alone that he would have obtained one. The government consistently expressed its view that a sentence of 100 months or more was appropriate. *See, e.g.*, Fakhoury Decl. Ex. C at 3; *id.* Ex. D at 1–2. The record does not support Jones's speculation that the government might have been willing to offer, once more, an agreement that would have allowed him to recommend a 60-month sentence. The government did originally offer such an agreement, *see id.* Ex. C at 3, but Jones rejected that offer, and when Long continued negotiations, the government repeatedly proposed less favorable agreements that would not have permitted Jones to ask for a sentence as low as 60 months, *see, e.g.*, *id.* Ex. D at 1–2; *id.* Ex. F at 1; *id.* Ex. H at 1. In addition, as the government notes in opposition, the uncharged burglaries or robberies played a substantial role in the parties' plea negotiations. *See* Opp'n at 9. The record does not include evidence showing the parties would have considered a return to the original proposed agreement, which included many fewer charges on the list of those the government would not pursue in the future. In total, Jones has not cited contemporaneous evidence supporting his hypothesis he could have obtained a better plea agreement, i.e., an agreement allowing him both to recommend a lower sentence and to avoid charges based on the same long list of burglaries or robberies.

Nor does the contemporaneous evidence support Jones's claim that he would have entered an "open" plea if further negotiations were unfruitful. Long consistently predicted Jones would face an even longer sentence if he did not reach an agreement with the government. *See, e.g.*, Fakhoury Decl. Ex. H at 2–3. That is because Jones would have been sentenced on both the gun

11

charge and the drug charge absent a plea agreement. *See, e.g.*, *id.* The local U.S. Attorney's Office also would have been free to pursue additional charges based on the suspected burglaries or robberies. Jones criticizes Long's predictions of longer sentences, but he does not argue those predictions amounted to ineffective assistance. *See* Mot. at 19–20. Nor does he dispute he would have faced the drug charge if he changed his plea without an agreement with the prosecution, which would have led to a more uncertain sentence, not to mention the possibility of future charges based on the suspected burglaries.

Jones also knew his attorney's recommendation would be just that: a recommendation, not a guarantee. The Ninth Circuit has held many times that a defendant cannot ordinarily show an attorney's sentencing prediction was prejudicial under the *Strickland* test if the defendant understood the court would make the final decision. *See, e.g.*, *Womack*, 497 F.3d at 1003–04; *Sophanthavong v. Palmateer*, 378 F.3d 859, 870–71 (9th Cir. 2004); *United States v. Thornton*, 23 F.3d 1532, 1533–34 (9th Cir. 1994) (per curiam); *Doganiere v. United States*, 914 F.2d 165, 168 (9th Cir. 1990); *United States v. Turner*, 881 F.2d 684, 687 (9th Cir. 1989), *overruled in part on other grounds by United States v. Rodriguez-Razo*, 962 F.2d 1418, 1424–25 (9th Cir. 1992). Here, the court confirmed during Jones's change-of-plea hearing that he understood he was facing a potential sentence of up to 15 years as a matter of law. Change of Plea Hr'g at 9–10. Jones also confirmed he understood "regardless of what [Long] told [him] or the attorneys may have discussed or agreed upon, that ultimately here it will be [the court's] job, on [its] own, to calculate the guideline range at the time of sentencing." *Id.* at 11. Jones agreed he understood the court could "decide whether or not to go outside of [that Guidelines range], above or below it . . . based on [the court's] own reading of the law, the sentencing factors Congress has said [the court] must consider, the guidelines, . . . the factual record of [his] case, . . . [and] information about [his] personal characteristics, [his] history, [his] criminal history, [and] the nature of the offense." *Id.* at 11–12.

Finally, Jones's argument also rests on the dubious assumption that a different recommendation from his attorney would have led to a more favorable outcome. He argues if he had negotiated an agreement allowing him to request a sentence within the Guidelines range he

ultimately faced, the court would have imposed a sentence in line with that recommendation, or at most a sentence at the top of the Guideline range that ultimately applied, i.e., 71 months, given the rarity of upward departures. *See* Mot. at 20–21. But in this case, this court found expressly that an upward departure was warranted in light of Jones's criminal history, recidivism, "very concerning uncharged conduct," personal characteristics, and other information in the Probation Department's report. Sent. Stmt. Reasons, ECF No. 47; *see also* Sent. Hr'g Tr. at 26–27 (finding similarly). The court found an 84-month sentence was sufficient but not greater than necessary under the sentencing factors in §3553(a) even though the advisory Guidelines range was lower. Sent. Hr'g Tr. at 26–27. The court undoubtedly would have considered the very same information if Long had recommended a lower sentence on Jones's behalf. Although it is impossible to state with certainty that the outcome would be no different at all, the court upon careful consideration is satisfied a lower recommendation would not have led to a lower sentence, given the record and the sentencing factors in § 3553(a). Jones has not demonstrated prejudice.

### C. Evidentiary Hearing and Certificate of Appealability

Although Jones believes the "documentary evidence" supports his position, he requests an evidentiary hearing if the court has "any questions or want[s] additional information 'as to what counsel did' and 'why it was done.'" Mot. at 22 (quoting *United States v. Pope*, 841 F.2d 954, 958 (9th Cir. 1988)). Jones does not identify any factual disputes an evidentiary hearing would resolve, *see id.* at 21–22, and the government argues in opposition that the record is undisputed, *see* Opp'n at 10. In reply, Jones disputes the government's assertion that Long "negotiated a beneficial plea agreement" and requests an evidentiary hearing to resolve that dispute. Reply at 7 (quoting Opp'n at 8). It is unclear how an evidentiary hearing would shed any further light on whether the plea agreement was "beneficial." The terms of that agreement are undisputed, and there is no disagreement about what Long did and why. Nor is there any uncertainty about what the government alleged, or the charges it brought. The court denies Jones's request for an evidentiary hearing.

Jones also requests a certificate of appealability. *See* Mot. at 22–23. A defendant can obtain a certificate of appealability by making a "substantial showing of the denial of a

constitutional right." 28 U.S.C. § 2253(c)(2).  The Supreme Court has interpreted that provision as requiring a defendant to show "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983), *superseded in part by statute on other grounds as stated in Slack*, 529 U.S. at 480–81).  Although the court is confident in its conclusions above, the court finds there is a reasonable basis for disagreement on two points:

    (1)    Whether Long provided ineffective assistance by incorrectly estimating Jones's base offense level, based on an analogy to the Ninth Circuit's decision in *Manzo*, 675 F.3d 1204, cited above.

    (3)    Whether, if Long had estimated a lower base offense level, the contemporaneous records of the parties' plea negotiations suggest Jones could have negotiated a more favorable agreement, and if not, whether the same evidence supports his claim he would have pleaded guilty without a plea agreement.

### III. CONCLUSION

The request for an evidentiary hearing is **denied**.  The motion to vacate or set aside the sentence is **denied**.  The court **grants** the request for a certificate of appealability on the two issues set forth above.  This order resolves ECF No. 63.

IT IS SO ORDERED.

DATED: November 19, 2025.

_____
SENIOR UNITED STATES DISTRICT JUDGE